### DRAKE v. HALL.

(Circuit Court of Appeals, Seventh Circuit. November 2, 1914. Rehearing Denied January 15, 1915.)

No. 2110.

1. PATENTS ☜192—JOINT PATENTS—TITLE AND RIGHTS OF JOINT OWNERS.

The granting of a patent to two persons vests each with an undivided half interest creating the relation of cotenants between them, so that each becomes entitled to use the invention without accounting to the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 269; Dec. Dig. ☜192.]

2. PARTNERSHIP ☜20—PATENTS ☜192—TITLE OF JOINT OWNERS—CONTRACT.

On dissolution of a partnership, all of the property was conveyed to the succeeding partner except a patent, issued to the two partners jointly and under which they had been manufacturing, which was declared to remain partnership property. The succeeding partner was given the exclusive use and control of the patent for one year for which he was to pay the other party a royalty on all articles made thereunder. *Held*, that such agreement did not constitute a partnership, but that the ownership of the patent remained as before, vested in the parties as tenants in common.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. ☜20; Patents, Cent. Dig. § 269; Dec. Dig. ☜192.]

3. PARTNERSHIP ☜5 — WHAT CONSTITUTES — COMMUNITY OF INTEREST IN PROFITS.

To constitute a partnership there must be a community of interest in the profits of the business.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 15, 16; Dec. Dig. ☜5.

For other definitions, see Words and Phrases, First and Second Series, Partnership.]

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by Edward E. Hall against Harry J. Drake. Decree for complainant, and defendant appeals. Reversed.

The appellee, Hall, is complainant in a bill filed against the appellant Drake for an accounting and other relief arising out of the appellant's use of letters patent No. 906,396—issued to both parties to the suit as individual patentees—alleged to constitute "a copartnership asset and copartnership property" by agreement of such parties. Upon final hearing of the issues, the decree of the District Court grants the relief sought, together with dissolution of the alleged copartnership therein and direction for public sale of the letters patent.

John C. Lawyer, of Macomb, Ill., for appellant.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge. [1] The decree presented by this appeal awards accounting and other relief against the appellant for his use of letters patent (U. S. No. 906,396), issued December 8, 1908, in favor of both parties to the suit as joint patentees. Under such grant the rule is elementary that each of these patentees was vested with an undivided half interest therein, creating the relation between them of cotenants for all benefits of the grant, so that each became entitled to use thereof without accountability to the other cotenant. No relation of copartnership is involved in such ownership, and whatever may have been the theory of ownership upon which the appellee's bill for equitable relief was framed and filed, the decree plainly proceeds and rests its rulings upon this proposition: That the evidence establishes conversion by the parties of their patent ownership from the relation of cotenancy fixed by the grant to that of copartnership therein.

[2] Undoubtedly the patentees may by agreement thus change the nature of their ownership and use of the patent into a copartnership business, and proof of such arrangement would furnish support for the decree. In another view, it may be that proof of their agreement or conduct as copartners in the manufacture and sale of goods under the patent, would authorize relief between the parties for an accounting of profits and losses arising in such business. Without proof, however, of one or both of these conditions in the appellant's use of the patent, as charged in the bill, no accountability arises, and the issue is thus narrowed to such inference of fact as may be derived from the evidence.

The essential facts are undisputed, in substance as follows: Appellant and appellee were copartners in business in and from 1906, up to February 22, 1911, engaged in the manufacture of tanks and troughs of various kinds "along the line of sheet metal goods," under the name of Illinois Sheet Metal Works. In 1908 an "improvement in stock troughs" was devised and they made application as joint inventors for a patent, which was granted and constitutes the patent in controversy, the expense thereof being paid out of copartnership funds. Thereafter these patented stock troughs were manufactured and sold in the course of the business, no express agreement appearing in reference thereto prior to dissolution. On February 22, 1911, their copartnership was dis-

solved, the appellee retiring from the business, under two contemporaneous written agreements, in substance as follows:

(1) A dissolution agreement providing (in the usual form) for sale to and purchase by the appellant of the property and business and assumption of liabilities, for a consideration named, together with these provisions in reference to the patent:

"It is mutually understood that in this sale, the patent for stock troughs, No. 906,396, is not included, but that said patent is still owned by the parties hereto as copartners, but not to be used in the business of the party of the first part [appellant] as partnership property, but under lease to be executed between the parties hereto, separate and distinct from this contract."

Also, that:

"This agreement is a complete and final completion of said copartnership business except as to said patent."

(2) An instrument reciting that "the parties hereto are the owners of patent No. 906,396"; that the appellant, having purchased the appellee's interest in the copartnership business, "desires to manufacture and handle said patent"; that it is agreed that the appellant "shall have the exclusive use and control of said patent" for one year, and the right to like exclusive use and control "for an additional ten years" thereafter, at his option, upon giving notice in writing of "his acceptance of said option," at least 90 days prior to February 22, 1912; and that he is to pay the appellee for "said exclusive use and control" five cents "on each and every article sold during said time" under the patent, in monthly payments as stated. It further provides for keeping account of sales thereunder, inspection of books and arbitration in case of dispute; that the appellee grants "his good will in said patent" and "will use what influence he has to increase" sales, but is not required "to devote any of his time to said purpose"; that the appellee will not sell his interest in the patent to any other person; but that if either party desires to sell his interest after termination of the agreement the other party shall have "the first option to buy the same"; and that the appellant may "permit other persons to manufacture said stock troughs, but shall be personally liable" for payment of five cents for each trough so made and sold. A supplemental agreement of March 13, 1911, is in evidence, but does not bear upon the controversy.

The appellant performed the agreement for exclusive use of the patent throughout the year and no complaint is made in respect thereof; but he failed or refused to exercise the option for extension of the term, and thereafter manufactured and sold stock troughs, within the patent, refusing to account therefor or pay the appellee any compensation for such use of the patent. Both bill and decree predicate liability upon this use on and after February 22, 1912, without other agreement in respect thereof than above recited.

From these facts—and as well from their testimony throughout—it may rightly be inferred that neither party was advised, at any of the above dates, that their interest under the patent grant was that of cotenants, but it is unmistakable that there was no agreement, express or implied, to vest their respective titles under such grant in the pre-existing copartnership between them, nor to change their relation as pat-

entees otherwise than by way of acquiescence or license for use of the patent in the copartnership business during the continuance of their copartnership relation in such business. We are of opinion, therefore, that support for the decree cannot arise out of their transactions prior to the dissolution agreements of February 22, 1911, and that the contentions on the part of appellee founded thereon must be overruled, so that solution of the controversy must rest exclusively on the terms of their dual written agreements of that date (above recited), read as an entirety.

The contention thereupon for copartnership relation in ownership or use of the patent, on and after February 22, 1912 (when the contemporaneous license agreement expired by limitation), we understand to be predicated on the provision of the dissolution agreement which reads:

"That said patent is still owned by the parties hereto as copartners, but not to be used in the business" of appellant "as partnership property, but under lease to be executed between the parties."

From this context in which the term "copartners" is used, we believe it plainly appears, not only that such term was not employed advisedly, but that it was neither understood nor intended thereby to change their legal relation as joint patentees, either in use or ownership, from cotenancy to that of copartnership. In any view, however, of their suppositions, either of pre-existing relationship as patentees, or of the meaning and effect of an undertaking to become copartners therein, the agreements relied upon are without force to create copartnership relation in ownership or use of the patent.

[3] The distinctions between co-ownership of property and copartnership relation therein, and that mere joint ownership and control of property does not constitute relationship as copartners therein, are well settled. Lindley on Partnership (2d Am. Ed.) § 6, c. 1. It is of the essence of copartnership relation that an agreement appear, express or implied, for sharing the profits of a business.

"The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits." Ward v. Thompson, 22 How. 330, 334, 16 L. Ed. 249; Meehan v. Valentine, 145 U. S. 611, 618, 12 Sup. Ct. 972, 36 L. Ed. 835.

Without proof of such import in the agreement or conduct of these parties the contention of copartnership relation between them thus became untenable.

The "lease" referred to in the above-mentioned clause of the dissolution provisions (and executed accordingly) grants the appellant "exclusive use and control of said patent," for the term stated, with no other requirement than accounting for the number of stock troughs made and sold thereunder and payment to the appellee of prescribed royalties, and thus contains no provision applicable to or consistent with copartnership therein. While the appellant's co-ownership authorized free use of the patent in his business, exclusive right of use could only be obtained through appellee's grant thereof. Examination of the primary dissolution agreement likewise discloses no provision either applicable to or consistent with copartnership relation (through

community of profits) between the parties in ownership or use of the patent.

The decree of the District Court, therefore, is unsupported by evidence, and it is reversed accordingly, with direction to dismiss the appellee's bill for want of equity.