[Civ. No. 1725.   Fourth Appellate District.—August 16, 1935.]

J. E. MORROW et al., Petitioners, v. THE SUPERIOR COURT OF KINGS COUNTY et al., Respondents.

John Douglas Short, Keyes & Erskine, Everts, Ewing, Wild & Everts, Wakefield & Hansen, Harris, Willey, Griffith & Harris, M. G. Gallaher, T. M. Stuart, David E. Peckinpah and Shepard & Shepard for Petitioners.

Wm. M. Cannon, McCutchen, Olney, Mannon & Greene and Edwin S. Pillsbury for Respondents.

Michael F. Shannon and Thomas A. Wood, as *Amici Curiae* on Behalf of Respondents.

BARNARD, P. J.—This is an application for a writ of prohibition based upon the contention that the respondent court is without jurisdiction to proceed with the trial of a case pending therein until another party, the Medallion Oil Company, is brought in as a defendant.

Petitioners herein are the plaintiffs in the action referred to, which was begun in 1931. The defendants therein are the successors in interest of W. H. Ochsner. The complaint therein alleged that the plaintiffs, or in some instances the predecessors of certain plaintiffs, were in 1910 the owners and in possession of certain placer mining locations covering a described 480 acres in the Kettleman Hills; that in 1910 they entered into a contract with W. H. Ochsner under the terms of which he agreed to do the necessary work and development, to drill oil wells thereon, and to obtain a patent for said lands, and that it was further agreed that when oil was discovered Oschner was to have one-half of each quarter section of said lands but was to convey the remainder to the plaintiffs. It was further alleged that the said Ochsner did the required work on said lands until November 29, 1920, at which time, in lieu of applying for patents, he made an application for a prospecting permit on said and other lands amounting in all to 2,538 acres; that this application was made in his own name but for the use and benefit of all the parties to said contract; and that on April 16, 1921, his application was granted and a permit to prospect for oil and gas was issued to him, which permit has been extended on several occasions and is still in full force and effect. It is then alleged that the said Ochsner obtained said patent because of certain preferential rights accruing to him because of work done and money expended under the contract referred to; that thereafter the said Ochsner assigned said permit to certain of the defendants who took the same with full knowledge of the rights of the plaintiffs; that the plaintiffs are entitled to a half interest in and to all the property rights and interests which have accrued or been acquired through or by means of said permit; and that the defendants hold one-half of any rights, rents, issues, royalties and profits thus acquired in trust for the plaintiffs.

The petition herein alleges that at the time of filing the action referred to these petitioners knew nothing about the claims or even the existence of the Medallion Oil Company; that during the year 1933 they learned that the Medallion Oil Company had filed a suit in equity in the United States District Court for the Southern District of California, naming as defendants all of the parties to the first-named action; that the petitioners thereafter learned that some of the de-

fendants in the other action had moved to dismiss that action in the federal court, which motion was granted; that subsequently, during the year 1934, the Medallion Oil Company filed an amended complaint in the action in the federal court and during the month of November, 1934, the petitioners were informed that motions to dismiss filed by some of the defendants in that case had been denied by the federal court and that suit would have to proceed to trial upon its merits; that, thereafter, these petitioners obtained a copy of the complaint filed in the federal court and determined from the allegations therein that the Medallion Oil Company was a necessary party to the action pending in the respondent court in order to have the issues therein completely determined; that on January 17, 1934, the petitioners filed in the respondent court a notice of motion asking that said court, upon its own motion and under the express provisions of section 389 of the Code of Civil Procedure, order the said Medallion Oil Company brought into said suit as a party defendant; that this motion was supported by affidavits, copies of which are attached to the petition; that the motion to make the Medallion Oil Company a party defendant in that case was denied by the trial court on February 11, 1935; and that the trial court is about to proceed with the trial of said action.

An alternative writ of prohibition was issued by the Supreme Court and made returnable here. In an answer to the petition filed on behalf of the respondents, it is alleged that the petitioners had knowledge of the claims of the Medallion Oil Company as early as July 15, 1931, at which time one of the defendants in the action first referred to, filed an answer in which it was alleged on information and belief that any contract between said Ochsner and the plaintiffs, or their predecessors in interest, was made by said Ochsner as the agent or representative of the Medallion Oil Company and that upon the execution of each such contract the same was, with the knowledge and consent of the plaintiffs and their predecessors in interest, assigned to the Medallion Oil Company, which corporation assumed the obligations of said Ochsner thereunder and which assignments constituted a full and complete novation releasing said Ochsner from any and all liability under such contract.

A copy of the complaint filed by the Medallion Oil Company in the federal court was filed in this proceeding. It is alleged therein that the plaintiff is a corporation organized under the laws of the territory of Arizona and now existing under the laws of the state of Arizona; that the suit is one in equity between citizens in different states of the United States wherein the matter in controversy exceeds the sum or value of $3,000; that on January 22, 1910, W. H. Ochsner entered into a written contract with one William P. Dunham whereby said Ochsner agreed to enter into the employment of said Dunham for the purpose of securing locations, by leases or otherwise, for prospective oil lands; that by the terms of said agreement the said Ochsner agreed to acquire properties of this nature wherever possible in the name of the said Dunham and for his use and benefit; and that the said Dunham agreed to pay said Ochsner a salary of $400 per month, necessary traveling expenses, and to give him a three per cent interest in all properties or interests which might be acquired, or three per cent of all stock in any corporation to which such properties might be conveyed; that pursuant to said agreement the said Ochsner made a study of lands in the Kettleman Hills and obtained for the said Dunham contracts with various locators in said district on condition that the said Dunham was to drill certain wells; that the said Dunham organized the Medallion Oil Company, transferring to said corporation the contracts which had been secured for him by said Ochsner and thereafter the corporation expended about $80,000 in drilling a well; that the said Ochsner was given three per cent of the stock in said Medallion Oil Company; that by December, 1912, a well had been drilled to a depth of 4,069 feet; that a drilling of said well was never abandoned although further work thereon was deferred until such time as improved equipment would be available; that a further reason for suspending work on said well in 1912 was that certain lands, including the land here in controversy, were withdrawn from entry by the United States government; that said lands were reopened for entry in 1920 under an act of Congress which provided for prospecting permits and for leases from the United States in lieu of the patents which had formerly been provided for, and also provided for a preference in favor of an applicant who had theretofore expended

money in prospecting for oil; that upon the advice of Ochsner the Medallion Oil Company did not pay its franchise taxes and allowed its rights as a corporation to be suspended with the understanding that such rights could and would be revived when the said Ochsner was successful in obtaining a permit or lease to drill on said lands; that between 1913 and 1920 the said Ochsner continually represented to the Medallion Oil Company that he was using his best efforts to obtain the permit from the government which would enable him to continue drilling on the land referred to; that in November, 1920, the said Ochsner filed an application in his own name for a prospecting permit enabling him to prospect for oil and gas upon these lands; and that on April 16, 1921, such a permit was issued to him, which permit and subsequent lease are still subsisting and in full force and effect; that for the purpose of defrauding the said Medallion Oil Company the said Ochsner concealed from said company the fact that he had applied for such permit and that the same had been issued by continually representing to that company during the years 1920 to 1926, inclusive, that he was endeavoring to obtain such a permit for the sole benefit of said company; that by reason of said misrepresentations the said company was induced not to make an application for said permit and to rely on the fact that the said Ochsner was making an application for said company; that said Ochsner obtained said permit upon the representation that he had drilled a well on a portion of the lands when, in fact, the well was drilled by the Medallion Oil Company; and that, after receiving said permit, the said Ochsner assigned the same to certain of the corporation defendants. The complaint then sets up in detail the various assignments made by Ochsner with the allegation that each was made with notice of the rights of the plaintiff. It is then alleged that the plaintiff is the sole and only person entitled to the benefits accruing from said lands under the permits and leases issued by the federal government and, among other things, the prayer asks that all of the purported assignments to various defendant corporations be canceled and set aside and that the plaintiff be given the permit and leases with all that has been taken from the land, and be given complete possession of the land to the exclusion of all other persons.

It is argued by the petitioners that the Medallion Oil Company is a necessary party to the action pending in Kings County since they are claiming one-half of everything that accrued by reason of the permits which Ochsner received and that this claim cannot be determined in the absence of the Medallion Oil Company, which corporation claims everything accruing from those permits in its entirety. The respondent argues that the Medallion Oil Company is not a necessary party in that action since the two claims are separate and distinct and involve different parties, different contracts and additional land, and since the first-named action could be tried as between the parties thereto, making any decree which the plaintiffs therein might recover subject to the rights, if any, of the Medallion Oil Company. The respondents further argue that the court was without power to make the Medallion Oil Company a defendant even if that company be considered a necessary party to that suit since summons could not be served upon that company within three years after the commencement of the action and, further, that in any event the trial court has passed upon the matter upon conflicting evidence and its action cannot be reviewed in this proceeding.

Since we feel this writ should be denied for another reason, it is not necessary to pass upon the questions thus raised. Not only are the issues which the petitioners seek to add to their action, as filed, already involved in another action now pending between the parties but it fully appears that the party thus sought to be brought in as a defendant is a citizen of another state which had the right to take its controversy with these petitioners into a federal court and which had already chosen that forum before any effort was made to bring it into the other action.

Where a state court and a federal court have concurrent jurisdiction, the tribunal whose jurisdiction first attaches will be left to determine the controversy without interference from the other. (*Thorpe* v. *Sampson,* 84 Fed. 63; *Gamble* v. *San Diego,* 79 Fed. 487; *In re Cohen,* 198 Cal. 221 [244 Pac. 359].) In *Baltimore & O. R. Co.* v. *Wabash R. Co.,* 119 Fed. 678, the court said:

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the ex-

clusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. (*Harkrader* v. *Wadley,* 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399]; *Farmers' Loan & Trust Co.* v. *Lake Street El. R. Co.,* 177 U. S. 51 [20 Sup. Ct. 564, 44 L. Ed. 667].) . . . The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' (*Covell* v. *Heyman,* 111 U. S. 176 [4 Sup. Ct. 355, 28 L. Ed. 390].) The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. (*Farmers' Loan & Trust Co.* v. *Lake Street El. R. Co., supra; Merritt* v. *American Steel Barge Co.,* 79 Fed. 228 [24 C. C. A. 530, 49 U. S. App. 85].) The rule is limited to actions which deal either actually or potentially with specific property or objects."

In *Empire Trust Co.* v. *Brooks,* 232 Fed. 641, it is said:

"Conflict of jurisdiction as to the subject-matter of the litigation does not mean merely that the two suits relate to the same physical property. *Moran* v. *Sturges* (154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981]) holds directly to the contrary. It means that the issues involved, relief prayed for, and parties to the two suits are so substantially alike that the *lis pendens* of the last brought is included in the first. Unless it can be said that the issues involved, the relief sought, and the parties to the suit in the federal court were included substantially in the *lis pendens* of the prior suit in the state court, the jurisdiction of the former did not conflict with that of the latter."

The essential question here is whether the state court, having first assumed jurisdiction over a controversy between the parties thereto as between themselves with respect to their interest in certain land, may be said to have also first assumed jurisdiction over the other controversy which has been started in the federal court, in which another party and other issues

are involved. The first action in the state court, to establish a trust and somewhat in the nature of a quiet title action, seeks relief as against certain persons and not as against the world, the action involving the effect of a certain contract but only as between the parties to the action. . The second action is of a similar nature but involves additional land and a new party who claims under a different contract and under a different set of equitable circumstances. In effect, the first action is to quiet title to the land as between the plaintiffs and the man with whom they dealt, Ochsner. In the second action the plaintiff claims that Ochsner had no title to the land and that, because of certain circumstances, it is entitled to the land not only as against Ochsner and his grantees but as against the plaintiffs in the first action as well. A judgment in the first action would not have been binding on the plaintiff in the second and the state court had not assumed jurisdiction over the question as to whether Ochsner himself had title to the land.

The issues in the two cases are not identical and the most that can be said is that both cases relate to the same land. The plaintiff in the second action did not choose to intervene in the state court but saw fit to file suit in the federal court, setting forth a cause of action against all of the parties to the first action. In *Boynton* v. *Moffat Tunnel Imp. Dist.*, 57 Fed. (2d) 772, the court said:

"The plaintiffs herein are not parties to the state court suit, and that court cannot grant them relief to which they are entitled. It is no answer to suggest that they might intervene in the state court; they have not, and are not required to."

In *Pitt* v. *Rodgers*, 104 Fed. 387, the court said:

"Our conclusion is that it must be held, upon the record before us, that the complainant had neither actual nor constructive notice of the pendency of the action in the state court at the date of his purchase, and his rights were unaffected by such action. It follows from this view that, as the complainant, Rodgers, was a nonresident of the state of Nevada, he had the right, notwithstanding the pendency of the action in the state court, to invoke the jurisdiction of the United States Circuit Court for the purpose of obtaining a judicial determination of the validity of his title to the prop-

erty purchased by him; and, the United States Circuit Court having obtained in such action jurisdiction over the appellants before the complainant was made a party to. the action in the state court, it had the right to proceed to a final determination of the controversy between the parties, and in the exercise of that jurisdiction properly enjoined the appellants from further proceeding against the complainant in the action pending in the state court. (*French* v. *Hay,* 22 Wall. 250 [22 L. Ed. 857] ; *Home Ins. Co.* v. *Howell,* 24 N. J. Eq. (238, 239).''

In so far as the Medallion Oil Company and its interests are concerned, and in connection with an entirely different controversy involving other parties and issues as well as additional land, jurisdiction was first assumed by the federal court. Thereafter petitioners sought to amend by bringing in a new party and a new controversy over which the federal court had assumed jurisdiction. Quoting further from *Boynton* v. *Moffat Tunnel Imp. Dist., supra:*

''Any amendment to the pleadings, or any order made, after the federal court suit was filed, would of course be ineffective to deprive that court of the jurisdiction over the *res* which attached with the filing of the bill. It is not to be assumed that the state court would direct the payment of the fund to parties not before it. But if the power existed, it was not exercised, for no dominion over the fund was exercised by the injunctive orders issued prior to the commencement of this suit; no change in the commission's possession was effected by these orders, they operating purely *in personam* on the members of the commission. Orders issued after the commencement of the action in the federal court would of course be ineffective to oust that court of a jurisdiction *in rem* which then attached.''

If the Medallion Oil Company which has thus started a different controversy in a different forum can be compelled to abandon that action, in so far as this particular land is concerned, and submit itself to the jurisdiction of the state court, it would be under the necessity of trying a part of its action in the state court and the remainder in the federal court. The state court had not taken possession or control of the land and had not been asked to determine all controversies relating to the title thereto but only those based upon one

contract and as between certain parties. A new controversy is involved in the second action. Since the federal court first assumed jurisdiction over that new controversy, with its new party, it should, under established rules, be allowed to complete the same.

Aside from any other consideration we think it would be improper to order the trial court to bring in a defendant when to do so would constitute an interference with a federal court which has first assumed jurisdiction over that party and over a different controversy between that party and the parties to the first action. The petitioners have ample opportunity to meet the claims of the proposed defendant in the other action now pending and, if desired, the action in the respondent court may proceed to trial with respect to the rights of the parties thereto without interfering with the rights of the proposed defendant.

We conclude that under these circumstances the trial court did not abuse its discretion in refusing to order the Medallion Oil Company brought in as a defendant.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Marks, J., and Jennings, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 14, 1935, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied.

In denying the petition for hearing in the Supreme Court, after decision by the District Court of Appeal, we think it appropriate to say that the record fails to show that there will be any excess of jurisdiction of respondent court in proceeding, as it threatens to proceed in the action, while at the same time it refuses to grant the motion of petitioners to order the Medallion Oil Company brought in as party defendant. If the trial court had found, or the record indisputably showed, that "a complete determination of the controversy cannot be had without the presence of other parties" (sec. 389, Code Civ. Proc.), then the provisions of the cited section 389 would be mandatory. This court has held that in such case

the question would become one of jurisdiction *in that* the court would be without authority to proceed without bringing in said party, and that if, nevertheless, it assumed to do so it could be subjected to the prohibitory writ *quousque*, that is to say, until the performance of a certain act, or the happening of a certain event—in this case the bringing in of said party, Medallion Oil Company (*Ambassador Petroleum Co.* v. *Superior Court*, 208 Cal. 667, 671 [284 Pac. 445]).

But here the court did not find and the record does not indisputably show that in the pending action in the court below, the controversy cannot be completely determined without the presence of Medallion Oil Company. In that action the court has not assumed control of the *res*, the property, or undertaken to determine its ownership against all the world. The action is simply one to determine adverse claims as between the plaintiff and the named defendants. While in such an action additional parties ordinarily may be brought in so as to include a settlement of their adverse claims, it is not our view that the controversy now before the court between the original parties may not be determined without prejudice to the rights of the oil company. Certainly those rights might be determined and the decree so drawn that it will save the rights, if any, of the excluded party. On the facts appearing, the question is not one of jurisdiction, and the court has jurisdiction to proceed without bringing in such party if in its discretion it shall decide upon that as the proper course.