[Civ. No. 17501. First Dist., Div. One. May 27, 1958.]

MIKE RAGAN, Respondent, v. JOHN SIRIGO, Appellant.

Theodore M. Monell for Appellant.

Todd & Todd for Respondent.

WOOD (Fred B.), J.—The judgment awarded plaintiff $3,100 for royalties due him pursuant to a contract dated August 8, 1941, whereby he granted defendant the right and license to manufacture and sell (with right of assignment and sublicense to others) certain patented devices claimed in a certain patent application, throughout the United States and its territories, dependencies and possessions, for the full term of any letters patent that might issue and all renewals and reissues thereof.

The contract reads as if there were two grantors, "William P. Murphy and Mike Ragan" and that the two of them owned the patent rights involved. Of the two, Ragan only, not Murphy, signed.

From these circumstances defendant would have us conclude that no contract came into existence; also, that there is a fatal defect of parties because of the failure to join Murphy or his personal representative (Murphy having died). Defendant further claims that the contract was terminated at such a time as would leave due as royalties the sum of $300 and no more. Our examination of the record convinces us that none of these claims is sound. The judgment should be affirmed.

(1) *Did the parties enter into a contract whereby plaintiff gave defendant the license described? Yes.*

 The trial court so found and the record supports the finding. That support is furnished largely by the conduct of the parties. For several years they treated it as a contract and recognized the obligations which it imposed upon them, respectively. It is a reasonable inference that the absence of the signature of Murphy or his personal representative was of no significance to them and that they intended and regarded it as a contract solely between themselves. (See *Cavanaugh* v. *Casselman*, 88 Cal. 543, 549 [26 P. 515]; *Winter* v. *Kitto*, 100 Cal.App. 302, 306-308 [279 P. 1024]; *John* v. *Marshall*, 103 Cal.App.2d 172, 178 [229 P.2d 367]; 12 Cal.Jur.2d 247-248, § 49.)

It happens that it was entirely competent for plaintiff to make such a contract without his co-owner joining therein. A joint owner of a patent may, without the concurrence of his co-owner, grant a third party the right to use the inven-

834

tion covered by the patent. (*Blackledge* v. *Weir & Craig Mfg. Co.*, 47 C.C.A. 212 [108 F. 71] ; *Lalance & Grosjean Mfg. Co.* v. *National Enameling & S. Co.*, 108 F. 77 ; *Drake* v. *Hall*, 136 C.C.A. 471 [220 F. 905, 906] ; *Talbot* v. *Quaker State Oil Refining Co.*, 104 F.2d 967, 968 ; *Gibbs* v. *Emerson Electric Mfg. Co.*, 29 F.Supp. 810.)

(2) *Neither Murphy nor his personal representative is an indispensable party to this action.*

■ The basis of defendant's claim in this regard is not entirely clear. The mere fact that Murphy and Ragan together owned the patent would not make Murphy an indispensable party in a suit by Ragan to enforce Ragan's rights under his sole contract with a third person. If Murphy were a third party beneficiary under the contract, he still would not be a necessary party to the action. (Code Civ. Proc., § 369.) *Lewis* v. *Hayes*, 177 Cal. 587 [171 P. 293], is not analogous. There, a partner was attempting to collect tort damages for injury to the partnership property.

As in *Morrow* v. *Superior Court*, 9 Cal.App.2d 16 [48 P.2d 188, 50 P.2d 66], the trial "court did not find and the record does not indisputably show that in the pending action in the court below, the controversy cannot be completely determined without the presence [of the claimed indispensable party]." (P. 27, opinion of Supreme Court upon denying a petition for a hearing by that court. See also *Ambassador Petroleum Co.* v. *Superior Court*, 208 Cal. 667, 671-672 [284 P. 445] ; *Jollie* v. *Superior Court*, 38 Cal.2d 52, 56-59 [237 P.2d 641].)

(3) *Was the contract terminated as claimed by the defendant? No.*

■ Defendant contends that the contract was terminated by mutual consent of the parties at a time when the accrued liability of defendant was $300. Paragraph (11) of the agreement provided : ". . . Licensee may terminate this agreement at any time upon sixty (60) days' notice in writing to Licensors, but such termination shall not relieve Licensee from any obligations or royalties accruing prior to the date of said termination." Defendant argues that a letter of September 27, 1948, from plaintiff's attorney to defendant's attorney demonstrates that defendant had already terminated the contract. In his letter of the 27th plaintiff's attorney wrote in part : "Mr. Ragan has asked me to reply to your letter of September 2nd which states that Mr. Sirigo feels that he must give up his license agreement with Mr. Ragan." This falls far short of demonstrating that Sirigo had given the required

notice of termination; also, the letter of September 2d was neither introduced nor offered in evidence. Moreover, there ensued later correspondence between the attorneys for the parties which reflects an attempt to effect a termination of the contract by mutual agreement and that they failed to agree upon mutually satisfactory conditions for such termination.

It does appear that under another clause* of the agreement plaintiff on January 10, 1949, gave defendant notice of default and intention to cancel upon the expiration of thirty days if the default were not cured within that period of time. However, the plaintiff did not follow this up by an act of cancellation. Instead, by a letter of February 17, 1949, he notified defendant that he elected to stand on the contract.

The trial court found that plaintiff had terminated the agreement by written notice and that the minimum royalties of $100 per month for the period extending from April 1, 1948, to October 31, 1950, amounted to $3,100. We might infer an implied finding that plaintiff gave written notice of cancellation on or about October 31, 1950. The amended complaint, which was filed November 30, 1950, alleged that plaintiff had terminated the agreement by written notice and that defendant was indebted for the amount of the minimum royalties which accrued between the period extending from April 1, 1948, to October 31, 1950. The record before us does not show when the original complaint was filed. If it was filed on or about October 31, 1950, the trial court may have treated the complaint as written notice of termination. However that may be, there is no evidence of an earlier termination by either party. Accordingly, defendant-appellant is not aggrieved by having his obligation to pay minimum royalties terminated as of the date impliedly found by the trial court. Plaintiff-respondent is not complaining nor would he be in a position to complain in view of the allegations in his amended complaint and in view of his failure to appeal.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 23, 1958.

---

*Paragraph (8) of the agreement declared that if either party defaulted in the making of any payment or committed other breach of the agreement "and shall not cure said default or breach within thirty (30) days after receipt of written notice thereof, then the injured party may forthwith terminate this agreement by written notice thereof. . . ."