[Civ. No. 27019. First Dist., Div. Three. Oct. 24, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF MARIN COUNTY, Respondent; WILLIAM KENT ESTATE COMPANY, Real Party in Interest. '

**COUNSEL**

Thomas C. Lynch, Attorney General, Jay L. Shavelson, Assistant Attorney General, Peter Graber, Harold W. Teasdale, Deputy Attorneys General, Bruce B. Bales, District Attorney, and Joshua W. Thomas, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Freitas, Allen, McCarthy, Bettini & MacMahon, Thacher, Jones, Casey & Ball and Lloyd Tunik for Real Party in Interest.

## OPINION

**DRAPER, P. J.**—The grantor of a lot reserved an easement over it, upon which he constructed a fence. An action brought only against the owner of the easement sought to abate the fence as a nuisance, on the ground that it extended into lands of plaintiff. In this original writ proceeding, we must determine whether the lot owner is an indispensable, or merely a conditionally necessary party.

In the basic action pending below, the state, petitioner here, is plaintiff and William Kent Estate Co. (hereafter company), real party in interest herein, is the sole defendant. The litigation has a long history. In 1950, company secured a decree quieting its title against petitioner to a sandspit bounded on one side by Bolinas Lagoon and on the other by the Pacific Ocean. The decree fixed the boundary between the upland, owned by the company, and the submerged lands, owned by the state. On the lagoon side, the boundary was specifically fixed by reference to the metes and bounds set in an existing survey. On the ocean side, however, the decree describes the boundary only as "the ordinary highwater mark on the shore of the Pacific Ocean," without more specificity. After that decree, company subdivided the land and sold a number of the ocean front lots. It drove a line of iron rails, several feet apart, into the sand at right angles to the shoreline, upon Lot 4. When this lot was sold, company reserved an easement for this line of rails, or fence. The state contended that these rails extended into its lands, and in 1960 commenced this action to abate, as a nuisance, the portion of the fence extending beyond the ordinary high tide mark. (A second cause of action for a declaration of the seaward boundary has been formally abandoned by petitioner-plaintiff). The case was tried in 1964, and judgment was for the state. The judgment fixed the boundary as the ordinary high water mark "as it may fluctuate naturally from time to time." Company appealed. The record showed that the sand builds up seaward during the summer months and that a reverse movement decreases the land area in the winter. This movement accounts for variation of as much as 80 feet in the point at which the water, at ordinary high tide, touches the shore line. We recognized that "the almost mathematical line bounding Blackacre" might not be achievable here, but we could not accept an elasticity of description which permitted a boundary movement of 80 feet or more each year. Accordingly, we reversed (*People* v. *William Kent Estate Co.*, 242 Cal.App.2d 156 [51 Cal.Rptr. 215]) and remanded the case for new trial to attempt to determine an average of shore movement which would permit fixing of a more constant boundary. Remittitur was filed below July 13, 1966.

Figures on such movements are less readily available than those on tidal heights. Since the offsetting movements here involved apparently occur

only annually, measurements necessary to fix an average could not be made quickly. Accordingly, the case did not come on for pretrial conference until April 24, 1969. On that occasion, for the first time in the almost nine years since the complaint had been filed, defendant company advanced the jurisdictional issue of failure to join an indispensable party. Trial was set for July 7. On May 26, company moved to dismiss unless there were a joinder of the owners of all 120 ocean front lots which had been sold by it. The court refused to grant this motion as to all lot owners, but did determine that the owner of Lot 4 is an indispensable party. It directed preparation of an order that he be joined and that the action not proceed until such joinder.

This determination was made only 18 days before expiration of the three-year period from filing of the remittitur (Code Civ. Proc., § 583). Petitioner promptly filed here its petition for mandate to prevent dismissal under the mandatory provision of section 583 and for prohibition to bar signing of a formal order staying proceedings until joinder of the owner of Lot 4. We issued the alternative writs. The problem of mandatory dismissal was met when, by agreement of the parties and the court, a witness was called at trial July 7. We thereafter discharged the alternative writ of mandate.

There remains the question whether the owner of Lot 4 is an indispensable party defendant. The pending action seeks only the abatement, as a nuisance, of a portion of the fence constructed by defendant company along the easterly boundary of Lot 4, upon an easement reserved by company which frees the lot owner of any duty to maintain the fence.

But ownership of the land upon which a public nuisance is maintained does not, of itself, make the owner an indispensable party defendant in an action to abate the nuisance (*Sherwood* v. *Ahart,* 35 Cal.App. 84, 87 [169 P. 240]).

We recognize, however, that the point at which the fence becomes a nuisance is the seaward boundary of company's reserved easement over Lot 4, and thus is coterminous, at that point, with the boundary of Lot 4. The lot owner, however, has not sought to intervene. Only company asserts his indispensability. It is dfficult to see how company, which has only most belatedly sought joinder of the lot owner, is in any way prejudiced by his absence.

Of course, if judgment in the pending action were to bind the lot owner as to any portion of his boundary, his joinder would be essential and this jurisdictional issue could be raised by appellant or by the court on its own motion.

But the non-party lot owner will not be prejudiced, because he will not be bound by the determination of the boundary issue in this case, even though that issue be substantially identical to one which might be

raised in later litigation in which he is a party and which he could raise here if joined. An action against some of the heirs at law, based upon the alleged agreement of the decedent to devise his entire estate to the promisee, necessarily involves determination of the existence and validity of such an agreement and thus superficially "affects" all heirs. But the decree in such an action, impressing a trust upon property which otherwise would go to defendant heirs, is not binding upon heirs who are not joined as parties (*Bank of California* v. *Superior Court,* 16 Cal.2d 516 [106 P.2d 879]; *Rundell* v. *McDonald,* 62 Cal.App. 721 [217 P. 1082]). Similarly, in an action by a plaintiff claiming oil rights under assignment from one Ochsner, a corporation claiming in another action to be the employer of Ochsner, and that he acted as its mere agent in acquiring the rights in the first place, was held not to be an indispensable party since it would not be bound by the judgment (*Morrow* v. *Superior Court,* 9 Cal.App.2d 16 [48 P.2d 188, 50 P.2d 66]).

Particularly applicable here is the language of the Supreme Court in denying hearing in *Morrow* (9 Cal.App.2d at p. 27). That court noted that the action was not one to determine ownership "against all the world." Rather, it was merely "to determine adverse claims as between the plaintiff and the named defendant. . . . Certainly those rights might be determined and the decree so drawn that it will save the rights, if any, of the excluded party." Decree here can and should similarly preserve the rights of the owner of Lot 4.

We hold, therefore, that in this action for an injunction to abate the fence as a nuisance the owner of the land on which the fence is located is not an indispensable party. Thus the court has jurisdiction to proceed without his joinder.

It is, of course, within the sound discretion of the trial court to order joinder of a conditionally necessary party (Code Civ.Proc., § 389; *Bank of California* v. *Superior Court, supra,* 16 Cal.2d at pp. 526-527). Here, however, the opinion of the trial court makes clear that it would not order joinder as a matter of discretion, but did so only because compelled by the lot owner's supposed status as an indispensable party. This exercise of discretion against joinder is fully supported by the record. Almost nine years elapsed from filing of the complaint to the first suggestion by company of such joinder. The case was once fully tried, judgment entered and appealed, the issues were fully briefed and argued on appeal, remittitur was filed and almost three years more passed—all before competent counsel raised the present issue. "If it is only an appellant's rights which may be injuriously affected by reason of the absence of other parties, it is his duty appropriately to call the trial court's attention thereto . . ." (*Rundell* v. *McDonald, supra,* 62 Cal.App. 721, 727). To bring a new party in at this time, with necessary amendment of the complaint,

would cause still further delay in this already protracted litigation and would raise grave questions as to the trial time limitation of Code of Civil Procedure section 583, together with issues as to the statute of limitations and adverse possession. These considerations are relevant (*Bank of California* v. *Superior Court, supra,* 16 Cal.2d at pp. 526-527), and support, if they do not compel, the trial court's exercise of its discretion against requiring joinder.

Although the trial court felt its action to be compelled by a jurisdictional issue, mandate seems a more appropriate remedy than prohibition.

Let peremptory writ of mandate issue, directing the trial court to refrain from entry of any order compelling joinder of the lot owner.

Brown (H. C.), J., and Caldecott, J., concurred.