[No. H008564. Sixth Dist. Mar. 25, 1992.]

SUMITOMO BANK OF CALIFORNIA, Plaintiff and Respondent, v.
STAN M. DAVIS et al., Defendants and Appellants.

[No. H008739. Sixth Dist. Mar. 25, 1992.]

STAN M. DAVIS et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SUMITOMO BANK OF CALIFORNIA, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4.

1308

COUNSEL

Andrews & Kurth, Laurence E. Wiseman and Robert E. White for Defendants and Appellants and for Petitioners.

No appearance for Respondent Superior Court.

Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Paul J. Matzger, Steven B. Mains and Craig A. Kepler for Plaintiff and Respondent and for Real Party in Interest.

OPINION

STONE, J.*—

1. *Introduction*

Stan Davis and Metropolis Capital Corporation, partners in a partnership owning commercial realty in San Jose (partners), appeal from an order appointing a receiver to manage the property during this action brought by Sumitomo Bank of California (Bank) to obtain judicial foreclosure of a first deed of trust. (Code Civ. Proc., § 904.1, subd. (g).) Partners have also petitioned for writ relief from this order and from an order overruling their demurrer. We dispose of both the appeal and the writ petition in this opinion.

Partners contend the trial court erred in assuming jurisdiction over the property because a federal court has already assumed jurisdiction over the same property in a prior federal action seeking judicial foreclosure of third deeds of trust. Partners alternatively contend the trial court abused its discretion by not abating this action. Finally, partners contend they were denied due process when the trial court did not continue the hearing on the appointment of a receiver to allow them to respond to reply declarations and documents filed by Bank two days before the hearing. For the reasons stated below, we will deny writ relief and will affirm the order appointing a receiver and implicitly denying a motion for continuance.

2. *Facts*

On June 30, 1988, Davis executed a promissory note to repay Bank $7 million secured by a deed of trust on real property on Taylor Street in San Jose. On August 10, 1988, Davis executed another promissory note to repay

---

*Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council.

Bank $500,000 secured by the same deed of trust. On December 27, 1989, Cannery Park I and II Associates, a limited partnership with partners as general partners, executed two $3,040,000 promissory notes to repay Whirlpool Financial Corporation secured by, among other things, two deeds of trust on real property including Bank's security to be acquired by the partnership. Whirlpool recognized the priorities of Bank's deed of trust and also a November 1986 $9 million deed of trust by Davis to Metropolis Capital Company that had been subordinated to Bank's security. On December 29, 1989, Davis transferred his obligation under Bank's note and deed of trust to the partnership.

On October 24, 1990, Whirlpool filed a diversity action in the United States District Court for the Northern District of California (sometimes the federal action) declaring a default in repayment by the partnership and partners and seeking, among other relief, appointment of a receiver and judicial foreclosure of its deeds of trust. The following day Whirlpool filed a first amended complaint. It later filed a second amended complaint adding many mechanic's lien claimants, but not Bank, as defendants.

Concurrent with Whirlpool's first complaint, it applied ex parte for appointment of a receiver and a temporary restraining order. Six days after a hearing on November 7, 1990, including opposition, the federal district court denied Whirlpool's application for a receiver and granted a preliminary injunction restraining the partnership from transferring funds without Whirlpool's prior consent except in the ordinary course of business and requiring joint checks by Whirlpool and the partnership for expenditures. In January 1991 the partnership and partners filed an answer and counterclaims against Whirlpool in the federal action.

On March 10, 1991, Whirlpool and four mechanic's lien claimants filed an involuntary bankruptcy petition against the partnership in the Bankruptcy Court for the Northern District of California. Bank was identified as among the partnership's other creditors.

On March 11, 1991, Bank filed the instant action in the Superior Court of Santa Clara County (sometimes the state action) against the partnership, partners, Whirlpool, various mechanic's lien claimants, and others, seeking appointment of a receiver, judicial foreclosure, and other relief. On the same day as its complaint was filed, Bank filed a motion for appointment of a receiver based on the complaint verified by Arthur Gartner, a vice-president of Bank, and a declaration by Gartner. A new notice of motion was filed seven days later, scheduling a hearing for April 18, 1991.

On March 29, 1991, Bank filed an ex parte application for appointment of a receiver based on the previously submitted papers and also a declaration by

Hisashi Takiguchi, a vice-president of Bank. The partnership and partners filed opposition the same day calling attention to the pendency of the federal action, among other things.[1] The opposition included a declaration by Davis. The same day the court denied this ex parte application conditioned on the partnership allowing inspection of books and records and an accounting.[2]

On April 11, 1991, the partnership and partners filed points and authorities and a declaration by Oretha Jeffords, a Metropolis employee, opposing a receiver. Jeffords simply declared that Bank's representatives were reviewing the partnership's books. On the same day the partnership and partners filed a general demurrer asserting the complaint preceded any default and the federal court had prior exclusive jurisdiction over the property.

On April 16, Bank filed additional documents in support of its motion seeking appointment of a receiver. Bank filed another declaration by Takiguchi and a declaration by Randolfo Dizon, an auditor and account executive of Bank, reporting his inspection of the partnership's books on April 8-10. Bank requested judicial notice of 18 documents, including 14 claims of mechanic's liens and 2 documents from the federal action, including an April 5, 1991, declaration by Catharine Midkiff, a Whirlpool employee, in support of Whirlpool's request for modification of the preliminary injunction.

On April 17, 1991, the partnership and partners filed opposition to Bank's latest filings, including a declaration by counsel Robert E. White. They alternatively requested a continuance or the striking of new facts and arguments. On April 18 in the federal action, the partnership and partners filed a third party complaint against Bank seeking to enjoin the state action and to obtain declaratory relief.

After a superior court hearing on April 18, 1991, by orders filed April 19 and April 23 the court granted Bank's application for a receiver.

In May Bank filed a motion in the federal action to dismiss the third party complaint against it, which the partnership and partners have opposed. No disposition appears in the record.

After a hearing on the demurrer by the partnership and partners on May 16, 1991, on June 12, 1991, the court overruled the demurrer.

---

[1]More details are stated where relevant below.
[2]No reporter's transcript of this hearing appears in the record.

3. *Does the prior federal action require abatement of this state action?*

Partners contend that, due to the prior, pending federal action to foreclose Whirlpool's lien, the state court is either precluded from assuming jurisdiction over this action to foreclose Bank's lien or it abused its discretion by not abating this action.

█ Early cases established that potential jurisdictional conflicts between courts should be avoided by all other courts deferring to the first court that assumed jurisdiction over specific property. (*Farmers Loan &c., Co.* v. *Lake St. Rd. Co.* (1900) 177 U.S. 51, 61 [44 L.Ed. 667, 671, 20 S.Ct. 564]; *Cutting* v. *Bryan* (1929) 206 Cal. 254, 257 [274 P. 326]; see *Morrow* v. *Superior Court* (1935) 9 Cal.App.2d 16, 22-23 [48 P.2d 188].) As expressed in *Princess Lida* v. *Thompson* (1939) 305 U.S. 456 [83 L.Ed. 285, 59 S.Ct. 275], "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. [Fn. omitted.]" (*Id.* at p. 466 [83 L.Ed at p. 291].)

Partners contend this rule of "prior exclusive jurisdiction" is mandatory. However, later cases establish that this rule of comity is merely discretionary when applied to a potential conflict between state and federal courts. (*Farmland Irrigation Co.* v. *Dopplmaier* (1957) 48 Cal.2d 208, 215 [ 308 P.2d 732, 66 A.L.R.2d 590]; *Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 747-748 [59 Cal.Rptr. 101, 427 P.2d 765], disapproving *Morrow, supra,* and other cases to the extent they indicated otherwise.) We recognize that Witkin regards the rule as discretionary only when the actions are in personam, citing *Farmland, supra,* and *Thomson, supra.* (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 349, pp. 769-770.) We find nothing in those cases to support this narrow reading, however. If the discretionary rule recognized in *Thomson* was limited to in personam cases, *Thomson* need not have disapproved *Morrow, supra,* an in rem case discussed more fully below. Moreover, we question the continued viability of distinguishing between in rem and in personam jurisdiction. █ "[I]n order to justify an exercise of jurisdiction *in rem,* the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' [Fn. omitted.]" (*Shaffer* v. *Heitner* (1977) 433 U.S. 186, 207 [53 L.Ed.2d 683, 699-700, 97 S.Ct. 2569].)

*Farmers Loan &c., Co., supra,* 177 U.S. 51, illustrates an early application of the rule. There, a corporate lender filed a federal diversity action seeking appointment of a receiver and foreclosure of a mortgage against a railroad.

(*Id.* at pp. 52-53 [44 L.Ed. at pp. 667-668].) Later the same day the railroad filed a state action against the lender and others seeking to enjoin any foreclosure on the grounds that most of the lender's corporate shareholders did not want to foreclose and the lender had not qualified to do business in the state. (*Id.* at p. 55 [44 L.Ed. at p. 668].) The state court issued a preliminary injunction and the federal court set it aside. (*Id.* at p. 57 [44 L.Ed. at p. 669].) The state court proceeded to trial and enjoined the lender from foreclosing. (*Id.* at pp. 58-59 [44 L.Ed. at pp. 669-670].) The state court judgment was appealed to the United States Supreme Court, which initially determined that equity jurisdiction first attached in federal court when the complaint was filed. (*Id.* at pp. 60-61 [44 L.Ed.2d at p. 671].)

The Supreme Court further determined the state court should not have attempted to interfere with the federal court's jurisdiction, reasoning: "The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of coordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. [¶] Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to Federal and state courts." (177 U.S. at p. 61 [44 L.Ed. at p. 671].)

██ *Morrow, supra,* 9 Cal.App.2d 16, relied on by Bank, recognized a limitation on the rule. Deference to another court is not automatic merely because two lawsuits involve the same property. They must also involve substantially the same parties, issues, and requested relief. (*Id.* at p. 23.) In *Morrow,* actions were filed first in state court and then in federal court contesting ownership of mining claims. The state plaintiffs claimed that one man acquired mining claims under a contract to convey most of them to the plaintiffs. (*Id.* at p. 18.) The federal plaintiff, a corporation, claimed that the same man acquired mining claims under a contract to convey them to it. (*Id.* at p. 20.) The state appellate court held it was unnecessary to join the federal plaintiff by amended pleadings in the state action, noting that the federal action involved a different party, a different contract, and even additional property. (*Id.* at p. 24.) "The state court had not taken possession or control

of the land and had not been asked to determine all controversies relating to the title thereto but only those based upon one contract and as between certain parties. A new controversy is involved in the second action. Since the federal court first assumed jurisdiction over that new controversy, with its new party, it should, under established rules, be allowed to complete the same." (*Id.* at pp. 25-26.)

Partners seek to distinguish *Morrow* as an in personam action. In denying a hearing in *Morrow,* the Supreme Court simply noted "the court has not assumed control of the *res,* the property, or undertaken to determine its ownership against all the world. The action is simply one to determine adverse claims as between the plaintiff and the named defendants." (9 Cal.App.2d at p. 27.) This observation falls short of classifying an action described by the lower appellate court as an "action . . . to quiet title to the land" (*id.* at p. 24) as in personam rather than in rem.

 While the federal and state foreclosure actions at issue here involve the same property, they do not involve all the same parties or the same issues. Whirlpool's federal action is intended to foreclose third deed of trust liens junior to the first deed of trust lien that Bank's state action is intended to foreclose. While partners, Whirlpool, and some mechanic's lien claimants are parties to both actions, Bank was not originally named as a party to the Whirlpool's federal foreclosure action. Partners named Bank in a third party complaint in the federal action after Bank filed this state foreclosure action. Bank has opposed its joinder in the federal action and the issue, to our knowledge, remains pending.

 It is long established in California that "it is not necessary to make a prior or superior lienholder a party to the action to foreclose an inferior mortgage lien." (*Williams* v. *Cooper* (1899) 124 Cal. 666, 669 [57 P. 577].) Neither senior nor junior lienors are necessary parties to each other's foreclosure actions, although they may be joined and foreclose their own liens by cross-complaint. (*Carpentier* v. *Brenham* (1870) 40 Cal. 221, 235; *Camp* v. *Land* (1898) 122 Cal. 167, 170 [54 P. 839]; *Van Loben Sels* v. *Bunnell* (1901) 131 Cal. 489, 494 [63 P. 773].) What is sold by judicial foreclosure is the property owner's interest in the property at the time of the mortgage or deed of trust being foreclosed. The judicial sale removes liens from the property junior to the one being foreclosed (*Sichler* v. *Look* (1892) 93 Cal. 600, 610 [29 P. 220]) if the junior lienors are made parties to the action (*Carpentier, supra,* 40 Cal. at pp. 234-235) but it does not affect senior liens. (*Sichler, supra,* 93 Cal. at p. 609.)

We need not resolve the parties' dispute about whether it is possible or proper under the doctrine of ancillary jurisdiction for Bank to cross-complain in the federal action for judicial foreclosure. Bank is not a necessary

party to Whirlpool's federal foreclosure because it cannot affect Bank's senior lien. On the other hand, Bank has named Whirlpool in its state foreclosure in order to remove its junior lien from the property.

■ The potential for jurisdictional conflict here is posed not by concurrent judicial foreclosures of different liens,[3] but by the requests for receivers in both actions. Certainly it would be problematic if two courts assumed control of the same property through two receivers. Here, this difficulty has been averted since a receiver was denied to Whirlpool in the federal action before one was granted to Bank in this state action.

This fact distinguishes *Cochran v. Pittsburg, S. & N. R. Co.* (W.D.N.Y. 1907) 158 F. 549, relied on by partners. There a federal court, relying partly on *Farmers Loan &c., Co., supra,* deferred proceeding on the foreclosure of a second deed of trust when a state court had already appointed a receiver in the course of foreclosing on a third deed of trust. *Cochran* would be more compelling if a receiver had been appointed in the federal action. Moreover, since *Cochran* the rigid rule has been relaxed and recognized to be one of mere comity, not exclusive jurisdiction.[4]

■ We are unpersuaded that the state court abused its discretion in appointing a receiver for the judicial foreclosure of a first trust deed, though the federal court previously denied a receiver for the judicial forecosure of third trust deeds. The state court was not required to defer to a federal action that did not even involve the security interest of the state action plaintiff, Bank. The court's ruling cannot be undermined by partners' subsequent attempt to join Bank in the federal action. While it may appear the state court has rushed in where the federal court feared to tread, a change of circumstances in the intervening time may explain the differing rulings. The possibility of jurisdictional conflict can now be avoided by the federal court recognizing the state court's appointment of a receiver.[5]

4. *Did the court err in not continuing the hearing?** 

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3]We recognize the remote possibility that, if the state foreclosure occurs first and if Whirlpool does not foreclose in the state action, there will be little left for Whirlpool to foreclose on in the federal action.

[4]Federal courts may have more reasons to defer to state court foreclosures applying state law to property in the state than the reverse.

[5]If the federal court perceives some interference with any control it chooses to exercise over the property, it may enjoin the state proceedings to protect federal jurisdiction. (28 U.S.C. § 2283; *Federal S. & L. Ins. Corp. v. PSL Rlty. Co.* (7th Cir. 1980) 630 F.2d 515, 522-523.)

*See footnote, *ante,* page 1306.

## 5. *Disposition*

The order appointing a receiver is affirmed. Since the same arguments are made on appeal and by petition for a writ, the petition is dismissed as moot.

Cottle, Acting P. J., and Bamattre-Manoukian, J., concurred.