[Civ. No. 52252. Second Dist., Div. Three. July 27, 1978.]

ROY T. MEREDITH et al., as Trustees, etc.,
Plaintiffs and Respondents, v.
ANTHONY DARDARIAN et al., Defendants and Appellants.

**COUNSEL**

William O'Bryan for Defendants and Appellants.

Berman & Hanover and Stephen H. Krumm for Plaintiffs and Respondents.

## OPINION

**POTTER, Acting P. J.**—This is an appeal by defendants Anthony Dardarian and The Tub, Inc., a corporation, from the judgment of the superior court in an unlawful detainer action holding them liable for unpaid rental due under a lease of real property. Plaintiffs Roy T. Meredith and Mary L. Carmack, as trustees of the estate of Madison W. Meredith, leased the premises to defendants by written lease of July 1, 1971, for the term of five years, ending June 30, 1976, at a stipulated rental of $512.50 per month. Thereafter, on November 16, 1971, defendants assigned the lease to defendant D. A & W Commercial Corporation (hereinafter assignee). Plaintiffs consented to this assignment in a writing which limited such consent so as "to reserve any and all rights of action which Lessor may have had under the original lease against THE TUB, INC., and/or ANTHONY DARDARIAN, in the event of default by the Assignee." The assignee assumed the obligations of the lease and entered into possession of the premises. However, from April 1, 1975, on, the assignee made no payment of rental (except for the month of December 1975) and the complaint for unlawful detainer was filed May 26, 1976. The assignee remained in possession to the time of trial. By stipulation, the complaint was amended to seek rental falling due subsequent to the filing of the complaint and at trial it was stipulated that the sum due owing and unpaid for rental of the premises through October 1976 (time of trial) was $9,225.

The lease contained an option in favor of the lessee for an additional term of five years at a rental not to exceed the existing rental plus $100 per month and one-fourth of the increase in taxes of the entire premises. However, this option was not exercised. The lease also provided that any holding over after the expiration of the term "with the consent of lessor, shall be construed to be a tenancy from month to month, at a rental of ($    ) Dollars a month, and shall otherwise be on the terms and conditions herein specified, so far as applicable."

It was stipulated at the trial that defendants were not notified of the fact that a portion of the partition between the leased premises and an adjoining storeroom (which the assignee occupied under a month-to-month lease from plaintiffs commencing July 1974) was removed. There was also testimony at the trial concerning this alteration. The written month-to-month lease contained a stipulation that the assignee guaranteed "that at the end of [the] rental agreement any alterations will be corrected to leave the building in the same and like condition that it is

this date." The president of the assignee testified that in July 1976 the partition was restored.[1]

Other evidence at the trial did not relate to the issues between these parties. There was no evidence of any demand having been made by plaintiffs upon defendants for payment of any of the installments of rent prior to May 6, 1976.

## Contentions

Defendants contend that the judgment against them is erroneous because (1) the uncontradicted facts show them to be sureties guaranteeing payment of the rental obligation of which the assignee is the primary obligor and they were discharged (a) "through unauthorized extensions of time, failure of the landlord to act for eviction for over a year, and failure to afford them the benefits of subrogation so that they could enforce the security agreement they held on the personal property of the subject premises," and (b) because the lessor "consented to a substantial alteration of the premises, without the consent of appellants, and so that they were not permitted to take the premises back in the same condition as when let to them," and (2) "[t]hat the judgment is erroneous as a matter of law for all months of rental charged to appellant[s] after the termination of the lease while D. A & W Commercial Corporation was in possession under the month to month renewal clause of the lease."

## Discussion

Defendants' first contention is without merit. Despite their assignment, they remain primary obligors under the terms of the lease and in any event would not, as sureties, be discharged by the lessors' delay in proceeding against the assignee. There was, moreover, no alteration of the premises which could not be, or was not, restored.

Defendants' second contention has merit. The judgment must be modified to limit defendants' liability to the unpaid rent up to the termination of the original lease.

---

[1] This testimony was to the effect that the wall was fully restored from the side seen from the premises leased to defendants, though it was not finished on the opposite side which faced the additional storeroom.

## Defendants Are Not Sureties

■   Defendants claim that they are sureties entitled to the defense of exoneration, based upon the statement to that effect in the decision of our Supreme Court in *Samuels* v. *Ottinger* (1915) 169 Cal. 209, 211 [146 P. 638]. *Samuels,* however, is not the last word on this subject. In *De Hart* v. *Allen* (1945) 26 Cal.2d 829 [161 P.2d 453], the defendant lessee-assignor claimed exoneration based upon the failure of the lessor to notify him that the premises would be relet for his benefit. In denying the efficacy of this defense, our Supreme Court said (*id.,* at p. 832): "No notice of reletting was given to Gammons, and defendant contends that when the assignment was made he became a surety and that the failure of plaintiffs to notify Gammons that the premises would be relet for his benefit operated to release defendant from liability. Ordinarily an assignment of a lease does not release the lessee from his obligations even though the lessor consents to the assignment. (*Samuels* v. *Ottinger,* 169 Cal. 209, 211 [146 P. 638, Ann. Cas. 1916E 830].) Nor does the express assumption by the assignee of obligations under the lease affect the liability of the lessee to the lessor. (*Lopizich* v. *Salter,* 45 Cal.App. 446, 449 [187 P. 1075]; 32 Am.Jur. 315.) It has sometimes been said that the effect of an assignment is to make the lessee a surety for the assignee. (*Samuels* v. *Ottinger,* 169 Cal. 209, 212 [146 P. 638, Ann. Cas. 1916E 830]; *Brosnan* v. *Kramer,* 135 Cal. 36, 39 [66 P. 979]; *Schehr* v. *Berkey,* 166 Cal. 157, 160 [135 P. 41].) This may be true in a limited sense as between the assignee and his assignor, the lessee, but as between the lessor and the lessee the latter remains a primary obligor under his express contract to pay rent. (*T.A.D. Jones Co.* v. *Winchester Repeating Arms Co.,* 55 F.2d 944, 61 F.2d 774, cert. denied, 288 U.S. 609 [53 S.Ct. 401, 77 L.Ed. 983]; Tiffany on Landlord and Tenant, vol. 1, p. 994; 32 Am.Jur. 310-311, 321.) It was therefore not necessary to give notice of reletting to Gammons in order to hold defendant."

It is thus apparent that defendants are not entitled to the defense of exoneration of a surety. Such being the case, even if "unauthorized extensions of time" were given or modifications to the premises which could not be restored had occurred, such facts would not constitute a defense. By assigning the lease which expressly provided that modifications might be made with the consent of the lessor, thereby giving their assignee the power to do whatever they might do as lessee, defendants foreclosed themselves from objecting to any modification.

*In Any Event the Lessors'*
*Delay in Proceeding Against*
*the Assignee Would Not Result*
*in the Exoneration of a Surety*

Though defendants refer to "unauthorized extensions of time," there is no evidence in the record that any extension of time was given. All that is shown is that the plaintiffs took no action to collect the rent from the assignee until the suit was brought. Such inaction is specifically covered by Civil Code section 2823, which provides: "Mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy, does not exonerate a surety."

Furthermore, defendants' assertion that as a result of plaintiffs' delay they have been deprived of "benefits of subrogation" under a "security agreement" is without any support in the record. No evidence was offered of the existence of any such agreement.

*There Was Substantial Evidence*
*From Which the Court Could Find No*
*Alteration of the Premises Occurred*
*Which Could Not Be Restored*

There is no specific finding on this subject because defendants did not request one. The court impliedly found that there was no alteration of the premises which precluded defendants' retaking the premises in the same condition as when let to them. The premises let to defendants consisted solely of the original two storerooms. The uncontradicted evidence of the assignee's president was to the effect that the alteration by which access was obtained to an adjoining storeroom was fully restored so that the original two storerooms were in the same condition as prior to the modification. Thus, even if defendants were sureties (which they were not), they would have no defense on this basis.

*Defendants Were Not Liable for*
*Rental Past the Original Lease Term*

The original lease expired June 30, 1976. It is apparent that if defendants had not assigned it, they would have had no liability for rental beyond that date unless they failed to surrender the premises. The judgment, however, holds them liable for rent for additional months through October 1976, upon the basis that the lease stipulated that any

holding over after the expiration of the term "with the consent of lessor, shall be construed to be a tenancy from month to month." The only justification that plaintiffs offer for this liability is the decision in *Realty & Rebuilding Co.* v. *Rea* (1920) 45 Cal.App. 673 [188 P. 621]. In that case, a lessee who had assigned the lease was held liable for default in the payment of the rent after the assignee exercised an option to extend the term of the lease. The exercise of this option made the extension obligatory upon the lessor.[2]

In holding the lessee-assignor liable, the court based its decision upon the theory that under such circumstances, the ". . . holding under the extended term would be by virtue of the original demise and not by virtue of the notice of extension." (*Id.,* at p. 677.) Whatever the validity of this reasoning in the fact situation presented in *Realty & Rebuilding Co.,* it is apparent that it has no application to the case at bench. The lease did not give the lessee or his assignee the right to hold over, and the establishment of a tenancy from month-to-month was dependent upon "the consent of lessor." In no sense, therefore, could such month-to-month tenancy be deemed to be "by virtue of the original demise." This distinction has been recognized in other jurisdictions. The annotation on this subject (1966) 10 A.L.R.3d, Rent—Lessee's Liability, section 2, pages 819-820, states: "Thus is has been recognized in several cases that if a lease contains an option in the lessee's favor to renew or extend the term which is binding on the lessor upon the lessee's election to exercise it, the lessee remains liable, under his covenant to pay rent, for rent during the extension or renewal, although he has assigned the lease and the option has been exercised by his assignee. The rationale of the rule is that the original term and the renewal or extended term are in legal effect a unit, and no distinction can be drawn as to the lessee's liability based on the cessation of the original rental period. . . . Where the option to extend or renew is not automatically binding on the lessor at the election of the lessee, however, the lessee has been held not liable. [Fns. omitted.]"

A similar statement appears in 49 Am.Jur.2d (1970) Landlord and Tenant, section 443, pages 446-447:

"Where a lease contains an option in the lessee's favor, to renew or extend the term, which is binding on the lessor upon the lessee's election to exercise it, the lessee remains liable, under his covenant to pay rent, for

---

[2]A similar option existed in the lease in this case but was not exercised.

rent during the extension or renewal, although he has assigned the lease and the option has been exercised by his assignee. Since in such case the original term and the renewal or extended term are in legal effect a unit, no distinction can be drawn as to the lessee's liability based on the cessation of the original rental period. . . .

"Where an option to extend or renew a lease is not automatically binding on the lessor at the election of the lessee, the lessee has been held not liable on his covenant to pay rent after renewal by his assignee. . . . [Fns. omitted.]"

Cited in support of the second half of the above statements is the decision in *Connolly* v. *Rogers* (1935) 292 Mass. 140 [197 N.E. 483], which so holds. More recently, the District of Columbia Court of Appeals said in *Groner* v. *Dryer* (1969) 256 A.2d 559, 563: "It is true that the renewal, standing alone, did not discharge appellants' original liability on the lease. Where a lease contains a renewal clause that is enforceable against the lessor and the renewal option is exercised by an assignee of the lessee, the lessee remains liable on his covenant to pay rent absent modifications resulting in a new lease. 32 Am.Jur. Landlord & Tenant §§ 358, 359, 362 (1941). See generally cases collected at 10 A.L.R.3d. 812, 818 (1966). On the other hand, a lessor and assignee may, by entering into a direct leasing arrangement or by varying materially the terms of the original lease, establish a new tenancy relationship, thereby terminating the old. Gerber v. Pecht, 15 N.J. 29, 30, 104 A.2d 41, 42 (1954); 32 Am.Jur. Landlord & Tenant §§ 362, 363 (1941); and *cf.* Kaskel v. Hollander, 68 F.2d 265, 267 (1st Cir. 1933), where the court expressed doubt whether the obligations of the original lessee on a lease assigned during the original term would continue into a renewal term, which he did not request, and the rent for which was fixed by an agreement or arbitration in which he did not participate."

We therefore conclude that it was improper for the court to impose liability upon defendants for rental for a period beyond the original term of the lease.

The judgment must be modified so as to reduce the amount of unpaid rent by $2,050.

It is unnecessary to make any further award of attorneys fees. Both parties, to some degree, have prevailed on this appeal. The judgment with respect to fees may therefore remain unchanged.

The judgment is modified by striking the second sentence of paragraph 2 therefrom and substituting the following:

"Plaintiffs shall have and recover from defendants Anthony Dardarian and The Tub, Inc., the total sum of $7,420.41, and shall have and recover from defendant D. A & W Commercial Corporation the total sum of $9,470.41 with respect to said premises."

As so amended, the judgment is affirmed. All parties to the appeal shall bear their own costs.

Cobey, J., and Allport, J., concurred.