Filed 9/18/14  Inland Western Temecula Commons v. Potter CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| INLAND WESTERN TEMECULA COMMONS, LLC, | |
| Plaintiff, Cross-defendant and Appellant, | E057085 |
| | (Super.Ct.No. RIC1109914) |
| v. | OPINION |
| SHERRY R. POTTER et al., | |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Michael S. Hider, Judge.

(Retired judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI,

§ 6 of the Cal. Const.)  Affirmed.

Bewley, Lassleben & Miller, and Ernie Zachary Park for Plaintiff, Cross-

defendant and Appellant.

1

Reid & Hellyer, Michael G. Kerbs and Scott Talkov, for Defendants, Cross-complainants and Respondents.

Plaintiff, cross-defendant and appellant Inland Western Temecula Commons, LLC, (Landlord) appeals from the summary judgment entered against it and in favor of defendants, cross-complainants and respondents Sherry R. and Richard P. Potter (the Potters) on Landlord's complaint for breach of contract, namely, a lease for commercial property. Landlord sued for unpaid rent; however, the trial court found that based upon Landlord's acceptance of a substitute tenant, together with substantially different lease terms via modifications and amendments, the Potters were relieved of any responsibility under the lease. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On March 1, 2000, Landlord's predecessor in interest (Starwood Wasserman Temecula, LLC) and Claudine Lozier and Farid Alavi executed a five-year lease (Lease) on the subject property. The Lease contained two 5-year options to renew that were required to be exercised, if at all, within three months of the expiration of the existing term. The rent calculation during the option terms was defined in the Lease. Herbert J. Barber and Myrna C. Barber (the Barbers) were the successors in interest to Lozier and Alavi. On March 7, 2005, the Barbers assigned their interest in the Lease to the Potters, who assumed "all of the terms and conditions contained in the Lease that are to be observed and performed by Assignor[s] from and after the Effective Date set forth above."

2

On June 3, 2008, Landlord consented to the assignment/assumption of the Lease by the Potters to Yul Blake and Michelle Ella-Blake (the Blakes). At that time, the only remaining option under the Lease was the second (and final) five-year option to renew from August 1, 2010, to July 31, 2015. On the same day that the Potters assigned the Lease to the Blakes, Landlord and the Blakes executed what is entitled "Lease Amendment Agreement" (First Amendment). The First Amendment identified the parties, terms, assignments, expiration and premises in the Lease, in addition to modifying specific terms. The modifications included changing the rent due during the second five-year option term from a set amount adjusted by the consumer price index to a Fair Market Rent to be "determined by Landlord." The First Amendment also granted Landlord the "unilateral right to terminate this Lease and to recapture the Premises" "upon at least sixty (60) days advance written notice . . . ." (Recapture Provision.) The Potters were not parties to the First Amendment, nor was their consent of this amendment sought or obtained.

On May 22, 2009, the Blakes and Landlord executed what is entitled "Second Lease Amendment Agreement" (Second Amendment; collectively with the First Amendment, Lease Amendments), which identified the parties, terms, assignments, expiration and premises in the Lease. The Second Amendment stated that the Blakes were exercising "the second Option Term pursuant to the provisions of the Extension Option Rider attached to the Lease, as modified by the terms hereof . . . and to otherwise amend the Lease as more particularly set forth herein." (Amended Second Option Term.) The Amended Second Option Term commenced on June 1, 2009, and expired on

3

May 31, 2014, and set forth Minimum Annual Rental in specified amounts identified in the Second Amendment. The Potters were not parties to the Second Amendment, nor was their consent to its terms sought or obtained.

The Blakes exercised the Amended Second Option Term nearly one full year before the last day (April 30, 2010) to provide notice to exercise the original second five-year option.

According to Landlord, the Lease Amendments provided more favorable terms than those in the Lease, and were necessary because "of the economy and the desire to maintain occupancy at the center." These Lease modifications benefitted Landlord in that it obtained an early renewal of the Lease. Likewise, the Lease modifications benefited the Blakes because they received rent abatement for the first three months of the Amended Second Option Term. However, if the Blakes defaulted on the Lease, then the abated rent would become immediately due and payable. The Amended Second Option Term provided an increase in rent by June 2011, a later beginning and ending term than that set forth in the Lease, and a third five-year option to renew, which extended the Lease four years beyond the termination date originally contemplated.

On October 12, 2010, a three-day notice to pay $21,772.41 or quit occupancy was issued by Landlord to the Blakes. The Blakes failed to pay this amount, they were evicted, and they filed for bankruptcy protection.

On June 7, 2011, Landlord initiated this action for breach of lease against the Blakes, the Barbers, and the Potters for unpaid rent under the Lease. The Blakes were dismissed as a result of their bankruptcy. While the complaint identified the Lease, it

4

failed to identify any of the Lease Amendments.  On August 9, 2011, the Potters entered their general denial and cross-complained for declaratory relief, alleging that the Lease Amendments did not bind them and that the Lease had expired by its own terms.

On March 19, 2012, the Potters moved for summary judgment on the grounds there was no material factual dispute that the Lease term had expired and the Lease Amendments did not bind them.  Landlord opposed the motion, and the trial court granted summary judgment in favor of the Potters.  The court found that, inter alia, Landlord and the Blakes materially modified the Lease such that a new lease was created, which relieved the Potters of any liability.  Judgment was entered on August 2, 2012.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate when all of the papers submitted show there are no triable issues of any material fact and the moving party is entitled to a judgment as a matter of law.  [Citations.]  '"The purpose of a summary judgment proceeding is to permit a party to show that *material* factual claims arising from the pleadings need not be tried because they are not in dispute." [Citations.]' [Citations.]

"A defendant moving for summary judgment has the burden of showing the plaintiff's causes of action have no merit.  [Citation.]  A defendant meets this burden if it makes a prima facie showing that one or more elements of each cause of action cannot be established or is subject to a complete defense.  [Citation.]  If the defendant makes this showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact.  [Citations.]

5

"We review the entire record de novo, considering '"all the evidence set forth in the moving and opposition papers . . . ."' [Citation.] We disregard evidence to which a sound objection was made but consider any evidence to which no objection or an unsound objection was made. [Citations.]

"'"'[W]e strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted." [Citation.] ". . . 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.'" [Citation.]' [Citation.]" (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 136-137 [Fourth Dist., Div. Two].)

## III.  ANALYSIS

Landlord contends the trial court erred in granting summary judgment in favor of the Potters because the modifications via the Lease Amendments did not relieve them of their obligations.

A lease is a contract formed by the mutual consent of the contracting parties. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268-1269.) A lessee's assignment of a lease is the sale of a leasehold interest. (*Flynn v. Mikelian* (1962) 208 Cal.App.2d 305, 310.) Although an assignment transfers the right of possession to the assignee, the assignor continues to be bound by its contractual obligations to the lessor under the lease, including the obligation to pay rent. (*De Hart v. Allen* (1945) 26 Cal.2d 829, 832.) This is true even if the lessor consents to the

6

assignment and the assignee expressly assumes the lease obligations. (*Ibid.*) The assignor is relieved of its contractual obligations only if the lessor agrees to relieve the assignor of those obligations (Civ. Code, § 1457), or the assignee and the lessor materially modify the terms of the lease (*Meredith v. Dardarian* (1978) 83 Cal.App.3d 248, 255 (*Meredith*).)

Here, as the Potters point out, the trial court "place[d] a lot of weight" on the decision in *Meredith*. In that case, assignors of a lease were sued by the landlord for rent unpaid by their assignee. (*Meredith*, *supra*, 83 Cal.App.3d at p. 250) The landlord had leased the premises to assignors on July 1, 1971, for a term of five years, at a stipulated rental of $512.50 per month. (*Ibid*.) On November 16, 1971, assignors assigned the lease to assignee. The landlord consented to the assignment but reserved all rights in the event of assignee's default. (*Ibid*.) The lease contained an option to renew for an additional five-year term. (*Ibid*.) Upon the assignee's default, the landlord sued and named assignors as defendants. The court held that despite the assignment, assignors remained "primary obligors under the terms of the lease . . . ." (*Id*. at p. 251.) However, the court found that assignors' obligation ended upon the expiration date in the original lease. (*Id*. at pp. 253-254.) The court observed, "'Where a lease contains a renewal clause that is enforceable against the lessor and the renewal option is exercised by an assignee of the lessee, the lessee remains liable on his covenant to pay rent absent modification resulting in a new lease. [Citations.] On the other hand, a lessor and assignee may, by entering into a direct leasing arrangement or by varying materially the

7

terms of the original lease, establish a new tenancy relationship, thereby terminating the old. [Citations.]'" (*Id.* at p. 255.)

With the above principles in mind, we consider Landlord's contentions.

**A. Were the Potters Liable After Assigning the Lease?**

According to Landlord, ". . . California adheres to the common law that, even after an assignment of his interest in the lease, the tenant remains liable to the landlord on principles of privity of contract." Landlord cites *Meredith* and contends that because the second five-year option was part of the Lease and exercised by the Blakes in conjunction with the Second Amendment, the Potters "remain[ed] liable therefor, notwithstanding the assignment to the Blakes." Absent any material modification of the Lease, Landlord is correct; however, *Meredith* also provides that "'a lessor and assignee may, by entering into a direct leasing arrangement or by varying materially the terms of the original lease, establish a new tenancy relationship, thereby terminating the old. [Citations.]'" (*Meredith*, *supra*, 83 Cal.App.3d at p. 255.) Thus, whether or not the Potters remain liable on the Lease is dependent on whether the Lease's terms were materially changed by the subsequent actions of Landlord and assignees (i.e., the Blakes).

**B. Was the Recapture Provision in the First Amendment a Material Modification of the Lease?**

The Recapture Provision in the First Amendment granted Landlord the "unilateral right to terminate this Lease and to recapture the Premises," "upon at least sixty (60) days advance written notice . . . ." The trial court found this provision "made the option to renew nonbinding." On appeal, Landlord contends this provision "[did] not negate the

application of *Meredith*" because (1) "unless and until the landlord exercised this independent right, the assignee would continue to have the right to exercise the option and the landlord would remain bound thereby," and (2) it "did not increase the burden on the assignors [because] if the recapture right had been exercised by the landlord (which did not happen), it would serve to terminate the [Potters'] exposure." Thus, Landlord argues that "either the recapture provision had no effect or it benefitted [the Potters]." We disagree.

An option is only binding on an assignor if it is "'automatically binding on the lessor at the election of the lessee.'" (*Meredith*, *supra*, 83 Cal.App.3d at p. 255; see 42 Cal.Jur.3d (2008) Landlord and Tenant, § 254, pp. 374-375; 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 538, pp. 620-621; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2013) ¶ 2:382, p. 2B-95; *Union Oil Co. v. Moesch* (1979) 88 Cal.App.3d 72, 78 [assignors "were not liable for rent incurred by their assignee during a holdover period which was at the express discretion of the lessor"].) Here, as the trial court observed, the second five-year option was not enforceable against Landlord because the Recapture Provision allowed Landlord to simply terminate the Lease. As the Potters point out, the original second five-year option had to be exercised within 90 days of the expiration of the existing term. If the Blakes had provided notice of their exercise of the second five-year option on the last possible day, Landlord could have exercised the Recapture Provision to terminate the Lease within 60 days, before the second five-year term would have begun.

9

In sum, if Landlord wanted the original second five-year option to be binding, it could elect not to exercise the Recapture Provision. However, if Landlord did not want the original second five-year option to be binding, it could simply invoke the Recapture Provision. Thus, under no circumstance was the second five-year option ever automatically binding on Landlord. Landlord's election to evict the Blakes rather than exercise the Recapture Provision is immaterial because, by virtue of the Recapture Provision, the Lease was no longer binding on Landlord. This constituted a material modification of the Lease.[1] As such, the Potters' potential obligations had changed and, according to *Meredith*, they were no longer bound by the Lease.

**C. Did the Modifications in the Lease Amendments Affect the Potters' Obligations? Alternatively, Is There a Triable Issue of Fact as to this Issue?**

According to Landlord, "The trial court . . . appears to have accepted the [Potters'] argument that the mere existence of the lease amendments between [Landlord] and the Blakes exonerated their ongoing liability." Landlord acknowledges that such conclusion "is only justified if the amendment materially increased the [Potters'] burden." However, according to Landlord, "there was no such increase in [the Potters'] burden, or, alternatively, at a minimum . . . there is a material issue of fact as to this issue."

---

[1] The trial court correctly observed: "The question is whether the Potters' and the Barbers' *potential* obligations changed, not whether they actually did change." (Italics added.) The fact that the Recapture Provision "could have been exercised renders the [second five-year] option unenforceable solely at the will of [Landlord]" such that Landlord was no longer automatically bound by it.

Landlord notes that the Lease was modified as follows: (1) the First Amendment allowed rent for the second five-year option period to be calculated at fair market value rather than based upon the consumer price index; (2) the First Amendment added the Recapture Provision; (3) the Second Amendment noted that the second five-year option was exercised; (4) the Second Amendment noted that the second five-year option term expired on May 31, 2014, 14 months earlier than it would have expired under the Lease; (5) the Second Amendment added a third option to extend the term of the Lease; and (6) the Second Amendment provided for the abatement of rent for the first three months at the inception of the second five-year option period unless lessee defaulted on payment. Landlord argues that these modifications did not materially increase the Potters' burden, but inured to their benefit. However, the question is not whether the modifications actually increased the Potters' burden. (*Meredith*, *supra*, 83 Cal.App.3d at p. 255.) Rather, the question is whether the modifications materially changed the terms of the Lease. As previously noted, the Recapture Provision alone was sufficient to constitute a material change in the terms of the Lease (see previous discussion, *Meredith*, *supra*, at p. 255); thus, we need not address the other modifications. Further, there is no material issue of fact regarding the Recapture Provision.

**D. Did the Lease Amendments Constitute a Novation? Alternatively, Is There a Triable Issue of Fact as to this Issue?**

Landlord contends that the amendments to the Lease failed to constitute a novation because they "do not comprise a substitution of the [Lease], but are merely modifications thereof." So what? Regardless of the label that Landlord chooses to use to identify the

11

modifications to the Lease (i.e., Lease Amendments), the fact remains the modifications materially changed the terms of the Lease. Again, those modifications include the Recapture Provision, the calculation of rent, the term of the Lease, and the abatement of rent for three months. The language in the modifications speaks for itself. There is no material issue of fact regarding this issue.[2]

**E. Award of Attorney Fees.**

Landlord appealed the award of attorney fees and costs to the Potters "based on the ground that the underlying judgment should be reversed." Because we have affirmed the judgment, we likewise affirm the award of attorney fees and costs.

IV.  DISPOSITION

The judgment is affirmed. The Potters are to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P.J.

RICHLI
J.

---

[2] The Potters have requested this court take judicial notice of the unpublished opinion of the California Court of Appeal, Second District, Division Three (*Augustson v. Texaco* (Sept. 9, 2008, B202633) [nonpub. opn.]). We reserved ruling on the request for consideration with the merits of the appeal. The request is granted, as we may take judicial notice of the unpublished opinion as a court record pursuant to Evidence Code section 452, subdivision (d)(1). (*Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 218, fn. 14.) However, the existence of this case did not affect our analysis.